IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-60656
Summary Calendar
_____

ELIZABETH MOORMAN,

Plaintiff-Appellant,

v.

INTERNATIONAL PAPER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
(3:97-CV-93-B-A)
_____

June 24, 1999

Before KING, Chief Judge, and EMILIO M. GARZA and DeMOSS, Circuit
Judges.

PER CURIAM:[*]

Elizabeth Moorman appeals the district court's grant of
summary judgment to defendant-appellee on her sex discrimination
claims brought pursuant to Title VII of the Civil Rights Act of
1964, 42 U.S.C. §§ 2000e to 2000e-17.  We affirm.


I.  FACTUAL AND PROCEDURAL BACKGROUND

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

International Paper Company (IP) hired Elizabeth Moorman on September 14, 1992, to be a light equipment operator at IP's Winona, Mississippi wood yard. Moorman claims that during her interview with IP, the person who interviewed her told her that IP "had to hire a woman for the job." IP subsequently promoted Moorman to the position of heavy equipment operator.

In July 1994, IP closed its Winona wood yard, and honored Moorman's preference to be transferred to its wood yard in Grenada, Mississippi. At Grenada, she continued to work as a heavy equipment operator. Moorman claims that while she worked at the Grenada wood yard, she was given distasteful assignments that were not given to male employees, that she was inadequately trained, that her equipment was insufficiently maintained, and that male co-workers called her derogatory names.

During her time at the Grenada yard, two episodes warrant further discussion. Shortly after she began working at Grenada, she "had a breakdown on the job one day" as she and a male co-worker, Daniel Whitt, the two employees at the yard with the least seniority, were assigned to sweep debris from concrete slabs and to clear out a conveyor. According to Moorman, she became frustrated after having to climb up and down a chute on an extremely hot day, and she "just started crying, and [she] couldn't stop." She went home, and later called Mr. Cantelli, an IP manager, and complained that she had been inadequately trained. After being promised that she would receive additional training, Moorman returned to work at the Grenada plant.

However, after she returned, she claimed that her supervisor gave her "the cold shoulder" and refused to slow down production to give her additional training. It is uncontested, however, that Moorman received all necessary training by October 1994.

The second relevant episode at Grenada occurred in July 1995. On that occasion, another extremely hot day, Moorman claims that Daniel Whitt told her to come from the other end of the yard to operate a knucklebroom machine to help unload logs. According to Moorman, the knucklebroom's exhaust system and fans were inoperable, and exhaust began to enter the cab of Moorman's machine. Moorman stated that "the fumes were coming out and my eyes started burning real bad." Despite the heat and exhaust, Moorman unloaded the truck and parked the machine. However, after dismounting the machine, Moorman suffered heat exhaustion, and she missed work the following day.

In early January 1996, IP re-opened the Winona yard as a storage facility. According to Moorman (who lives in Winona), her supervisor at the Grenada yard asked her if she wanted to be transferred to the Winona yard, and she told him that she did. She generally worked alone at the Winona yard. Shortly after she began work at the Winona yard, her supervisor came to the Winona yard and told her that she was not eligible to receive a safety certificate because her July 1995 heat exhaustion episode was a recordable incident for safety purposes. According to Moorman, IP's refusal to award her a safety certificate "broke the straw of the camel's back," and caused her to resign her job at IP

3

effective February 2, 1996. Moorman filed a charge of sex discrimination with the United States Equal Employment Opportunity Commission (EEOC) on April 11, 1996.

Moorman filed the instant action on May 14, 1997, in the United States District Court for the Northern District of Mississippi. She alleged that she was discriminated against because of her sex and constructively discharged by IP in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. The district court granted IP's motion for summary judgment and dismissed both claims, concluding that her sex discrimination claim was time-barred and that Moorman failed to raise a factual issue as to whether she had been constructively discharged. This timely appeal followed.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. See Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). We must view all evidence in the light most favorable to the party opposing the motion and draw all reasonable inferences in that party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

4

Moorman argues that the district court erred in granting summary judgment to IP on her sex discrimination and constructive discharge claims. She claims that the district court's conclusion that her sex discrimination claim was time-barred was inappropriate because she sufficiently alleged a continuing violation occurring both before and during the statutory period. Second, she claims that she raised a factual issue as to whether IP's actions toward her amount to a constructive discharge. We address these issues in turn.

## A. Continuing Violation

"A Title VII plaintiff must file a charge of discrimination with the EEOC within 180 days 'after the alleged unlawful employment practice occurred.'" Webb v. Cardiothoracic Surgery Assocs., 139 F.3d 532, 537 (5th Cir. 1998) (quoting 42 U.S.C. § 2000e-5(e)(1)). Moorman filed her discrimination charge with the EEOC on April 11, 1996; she may therefore recover under Title VII only for conduct that occurred after October 14, 1995, 180 days before the filing of her charge. See id.

Moorman argues that her deposition testimony establishes that IP had an "ongoing and pervasive pattern and de facto policy of discriminatory treatment of females," and that because that pattern and policy constitutes a continuing violation of Title VII, "[t]he 180 day limit does not apply."

Moorman points to several instances of conduct by IP and IP employees that she claims support her assertion that IP's actions toward her constitute a continuing violation of Title VII.

5

Specifically, Moorman claims that she was given distasteful assignments "that males refused to accept but which she was not allowed to refuse," that IP employees called her derogatory names, including "he-she" and "fat bitch," that her equipment was not repaired as quickly as her male co-workers' equipment, that she was subjected to a more rigorous training requirement than male IP employees, and (somewhat contradictorily) that she was inadequately trained.

Moorman's argument that if she is able to show a continuing violation, then the 180-day statute of limitations "does not apply" mischaracterizes the equitable theory of a continuing violation. The theory of a continuing violation does allow a court to consider conduct occurring before the statutory period in a Title VII suit "where the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." Id. (internal quotation marks omitted). However, even where a plaintiff can establish a continuing violation, we may not disregard the 180-day period. Instead, the plaintiff must still be able to demonstrate that one or more of the defendant's acts that constitute the continuing violation fall within the limitations period. See id.; Messer v. Meno, 130 F.3d 130, 134-35 (5th Cir. 1997), cert. denied, 119 S. Ct. 794 (1999).

Even were we to conclude, after consideration of the factors discussed in Berry v. Board of Supervisors of Louisiana State

6

University, 715 F.2d 971, 981 (5th Cir. 1983),[1] that all or part of the above alleged conduct could constitute a continuing violation of Title VII, we are bound to affirm the district court's grant of summary judgment on Moorman's sex discrimination claim.  The record before us simply does not support a conclusion that any of the allegedly discriminatory conduct took place within the statutory period.

The only concrete allegations of discrimination in the record each occurred before October 1995, 180 days before Moorman filed her complaint with the EEOC.  Although she does claim generally that "throughout her employment with IP . . . she was given the distasteful assignments that males refused to accept but which she was not allowed to refuse," the only such incident that she identifies was her July 1995 heat exhaustion incident, which she claims occurred as a result of being forced to undertake an assignment all of her male co-workers refused to perform.  Similarly, although in her brief she alleges that "[d]uring the entire time of her employment, her equipment was given [inadequate] attention," her deposition testimony does not support such a broad statement.  Instead, Moorman identified only one occasion on which she claims that her equipment was in

_____

[1] Among the factors that we must consider in order to determine whether conduct by a defendant constitutes a continuing violation of Title VII, as opposed to "discrete, isolated, and completed acts which must be regarded as individual violations" are:  (1) the subject matter of the conduct; (2) the frequency of the allegedly discriminatory conduct, and (3) the degree of permanence of the conduct.  Id.; see Waltman v. International Paper Co., 875 F.2d 468, 475-76 (5th Cir. 1989).

7

disrepair. She claimed in her deposition that between her July 1995 heat exhaustion incident and her January 1996 transfer to the Winona yard, the emergency brake on her front end loader was faulty. However, this claim does not raise a factual question of sex discrimination; Moorman admitted that IP ordered a replacement brake cable, and that, although she had to install the brake cable herself, "[e]veryone had to service their own machines."

Likewise, Moorman's claim that she has raised a genuine issue of material fact as to whether IP has committed a continuing violation of Title VII is not supported by her assertions in her deposition that male co-workers, on two occasions, called her derogatory names or that she was inadequately trained (or, in the alternative, that she was forced to undergo more extensive training than her male counterparts). Moorman admitted in her deposition that both of the episodes in which she claimed to have overheard co-workers talking about her in derogatory terms took place before the July 1995 heat exhaustion episode, and therefore outside the statutory period. She also admitted in her deposition that she completed testing on each relevant piece of IP machinery by October 1994, well before 180 days prior to her EEOC filing.

The continuing violation "doctrine will render a complaint timely as to a course of conduct only if the complaint is timely as to the most recent occurrence." Huckabay v. Moore, 142 F.3d 233, 240 (5th Cir. 1998). Thus, because Moorman has failed to

8

raise a factual issue as to at least one incident of sex discrimination within the 180-day statutory period, her sex discrimination claim is time-barred.  See Waltman v. International Paper Co., 875 F.2d 468, 474 (5th Cir. 1989); see also Messer, 130 F.3d at 134-35 ("The continuing violation theory relieves a plaintiff of establishing that all of the complained-of conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period.") (emphasis added).  We therefore conclude that the district court properly dismissed Moorman's sex discrimination claim on statute of limitations grounds.

## B.  Constructive Discharge

Moorman next argues that the district court erred in determining that her resignation from IP, which occurred within the statutory period, did not meet the test for constructive discharge.  We agree with the district court that Moorman failed to make a factual showing that her "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Landgraf v. USI Film Prods, 968 F.2d 427, 429 (5th Cir. 1992) (internal quotation marks omitted), aff'd 511 U.S. 244 (1994); see Ugalde v. W.A. McKenzie Asphalt Co., 990 F.2d 239, 242 (5th Cir. 1993).

Moorman resigned from her job at IP after she failed to receive a safety certificate because of the characterization of the July 1995 heat exhaustion episode as a recordable incident for safety purposes.  She does not disagree with the district

court's conclusion that "her failure to receive a safety certificate was [not] anything other than a non-discriminatory application of a company safety rule." On appeal, Moorman argues that her failure to receive a safety certificate was only the last straw in a long line of "unfair" treatment, and that a reasonable person in her shoes would have felt compelled to resign.

However, we agree with the district court that a reasonable person in Moorman's shoes would not have felt compelled to resign. Moorman bases much of her argument that she was constructively discharged on the fact that she worked alone after her transfer to the Winona yard. However, as the district court noted and the record clearly demonstrates, Moorman chose to transfer from the Grenada yard to the Winona yard with full knowledge that she was the only employee to be transferred to Winona. In short, "[n]either the discrimination that [Moorman] alleges nor the working conditions [she] decries constitute the intolerable working conditions required to prove constructive discharge." Boze v. Branstetter, 912 F.2d 801, 805 (5th Cir. 1990). We therefore affirm the district court's dismissal of this claim.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

10